1  STEPHEN L. BERRY  (SB# 101576)
   stephenberry@paulhastings.com
2  BLAKE R. BERTAGNA  (SB# 273069)
   blakebertagna@paulhastings.com
3  PAUL HASTINGS LLP
   695 Town Center Drive
4  Seventeenth Floor
   Costa Mesa, California  92626-1924
5  Telephone:  1(714) 668-6200
   Facsimile:  1(714) 979-1921
6
   Attorneys for Defendant
7  WALT DISNEY PARKS AND RESORTS
   U.S., INC.
8

9              UNITED STATES DISTRICT COURT

10            CENTRAL DISTRICT OF CALIFORNIA

11

12  WILLIAM DE OLIVEIRA, individually      CASE NO.
    and on behalf of other persons similarly
13  situated,                              **NOTICE OF REMOVAL OF
                                           CIVIL ACTION TO FEDERAL
14              Plaintiff,                 COURT UNDER 28 U.S.C. §§
                                           1331,1332,1441, 1446, AND 1453;
15        vs.                              DECLARATION OF MARIBETH
                                           N. BISIENERE IN SUPPORT
16  WALT DISNEY PARKS 7 RESORTS,           THEREOF**
    U.S., INC. and DOES 1 through 10,
17
                Defendant.
18

19

20

21

22

23

24

25

26

27

28

LEGAL_US_W # 90711047.1

1  TO THE HONORABLE JUDGES OF THE UNITED STATES DISTRICT

2  COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA, PLAINTIFF

3  WILLIAM DE OLIVEIRA, AND HIS ATTORNEYS OF RECORD:

4

5      PLEASE TAKE NOTICE THAT defendant Walt Disney Parks and

6  Resorts U.S., Inc. ("Defendant") hereby removes this action from the Superior

7  Court of the State of California for the County of Orange to the United States

8  District Court for the Central District of California.  Defendant removes this action

9  pursuant to 28 U.S.C. §§ 1331, 1332 (as amended by the Class Action Fairness Act

10 of 2005 ["CAFA"], Pub. L. 109-2,  section 4(a)), 1441(a), 1446, and 1453 for the

11 following reasons:

12

13              **Pleadings, Process, and Orders**

14

15      1.     On June 15, 2017, plaintiff William De Oliveira ("Plaintiff")

16 filed an unverified proposed class action complaint in the Superior Court of the

17 State of California for the County of Orange, entitled:  *"William De Oliveira,*

18 *individually and on behalf of other persons similarly situated, Plaintiff v. Walt*

19 *Disney Parks and Resorts U.S., Inc., and Does 1 through 10, inclusive, Defendant,"*

20 and designated as Case No. 30-2017-00926470-CU-OE-CXC (the "Complaint").

21 The Complaint alleges the following five purported causes of action against

22 Defendant: (1) failure to pay minimum wages; (2) unfair competition; (3) failure to

23 provide accurate wage statements; (4) failure to pay all wages owed upon

24 termination; and (5) civil penalties under the Private Attorneys General Act of 2004

25 Lab. Code, § 2698, *et seq.* ("PAGA").  A true and correct copy of the summons and

26 Complaint is attached hereto as Exhibit "A."

27

28

- 1 -

NOTICE OF REMOVAL OF CIVIL ACTION
TO FEDERAL COURT UNDER 28 U.S.C. §§
1331, 1332, 1441, 1446, AND 1453

2.      On June 23, 2017, the summons and Complaint were served on Defendant. *See* Declaration of Maribeth N. Bisienere ("Bisienere Decl."), ¶ 2, attached hereto as Exhibit "B."  The Complaint is the initial and only pleading served on Defendant setting forth the claims for relief against Defendant upon which this action may be removed. *Id.*  Therefore, this notice of removal is being timely filed pursuant to 28 U.S.C. § 1446(b).

3.      On July 19, 2017, Defendant answered the Complaint.  A true and correct copy of the answer is attached hereto as Exhibit "C."

4.      The summons, Complaint, and answer to the Complaint constitute all process, pleadings, and orders served on or by Defendant in this action.

5.      In accordance with 28 U.S.C. § 1446(d), the undersigned counsel certifies that by written notice a copy of this notice of removal and all supporting papers were promptly served on Plaintiff and filed with the clerk of the Orange County Superior Court.  True and correct copies of the form of said notices are attached hereto as Exhibits "D" and "E," respectively.  Therefore, all procedural requirements under 28 U.S.C. § 1446 have been satisfied.

6.      Venue is proper in this district pursuant to 28 U.S.C. § 1441(a) because the superior court where the removed case was pending is located within this district.

## Federal Question Jurisdiction

7.      This action is a civil action over which this Court has original jurisdiction under 28 U.S.C. § 1331 and is one that may be removed to this Court

- 2 -

LEGAL_US_W # 90711047.1

1  by Defendant pursuant to the provisions of 28 U.S.C. § 1441(b). As set forth

2  below, Plaintiff's claims are substantially dependent upon interpretation and

3  application of a collective bargaining agreement ("CBA") between an employer and

4  a union that applied to him. Therefore, the action is entirely preempted by section

5  301(a) of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185(a)

6  ("Section 301").

7

8       A.    **Plaintiff's First And Primary Cause Of Action For Unpaid Wages**

9              **Is Substantially Dependent Upon Interpretation And Application**

10             **Of A CBA And, Therefore, Is Completely Preempted By The**

11             **LMRA.**

12

13      8.    State-law claims that require interpretation, analysis, and

14 application of collective bargaining agreements are preempted by the LMRA. As

15 the United States Supreme Court explained in *Allis-Chalmers Corp. v. Lueck*, 471

16 U.S. 202, 220 (1985): "[W]hen resolution of a state-law claim is substantially

17 dependent upon analysis of the terms of an agreement made between the parties in a

18 labor contract, that claim must either be treated as a § 301 claim, or dismissed as

19 pre-empted by federal labor-contract law." Thus, any state claim where a defendant

20 alleges LMRA preemption as a defense may be subject to complete preemption and

21 be removed if the court must interpret the parties' collective bargaining agreement.

22 *See, e.g., Caterpillar Inc. v. Williams*, 482 U.S. 386, 393 (1987) ("Once an area of

23 state law has been completely pre-empted, any claim purportedly based on that pre-

24 empted state law is considered, from its inception, a federal claim, and therefore

25 arises under federal law. . . . The complete pre-emption [doctrine] is applied

26 primarily in cases raising claims pre-empted by § 301 of the LMRA."); *Newberry v.*

27 *Pacific Racing Association*, 854 F.2d 1142, 1146 (9th Cir. 1988) ("The preemptive

28

- 3 -

force of section 301 is so powerful that it displaces entirely any state cause of action for violation of a collective bargaining agreement . . . and any state claim whose outcome depends on analysis of the terms of the agreement.").

9.     It is immaterial that Plaintiff has avoided reference to the applicable CBA or the LMRA in his Complaint.  Under the artful pleading doctrine, a plaintiff may not avoid federal jurisdiction simply by casting in state-law terms a claim that can be made only under federal law. *See Olguin v. Inspiration Consol. Copper Co.*, 740 F.2d 1468, 1472 (9th Cir. 1984) ("[E]mployees frequently attempt to avoid federal law by basing their complaint on state law, disclaiming any reliance on the provisions of the collective bargaining agreement. . . .  In such cases the 'artful pleading' doctrine requires that the state law complaint be recharacterized as one arising under the collective bargaining agreement.  The case may then be removed to federal court and adjudicated under the appropriate federal law."), *overruled on other grounds by Allis-Chalmers v. Lueck*, 471 U.S. 202, 220 (1985); *Fristoe v. Reynolds Metals Co.*, 615 F.2d 1209, 1212  (9th Cir. 1980) (affirming summary judgment and rejecting argument of lack of jurisdiction in removed case; "Mere omission of reference to LMRA s 301 in the complaint does not preclude federal subject matter jurisdiction.").

10.     It is well established law that the LMRA preempts state-law wage and hour claims. *See, e.g., Firestone v. S. Cal. Gas Co.*, 219 F.3d 1063, 1066-67 (9th Cir. 2000) (holding that plaintiffs' class action for unpaid overtime based on alleged violation of the California Labor Code was preempted because resolution of the overtime claim required an interpretation of the CBA: "[B]ecause the collective bargaining agreement must be interpreted to determine whether the [employees' compensation agreement] provides for premium wage rates for

- 4 -

LEGAL_US_W # 90711047.1

overtime work and, therefore, whether California's overtime exemption provision applies . . . Plaintiffs' state law claim is preempted by the LMRA."); *Guinan v. Dean Foods of Cal., Inc.*, 16 Fed. App'x 627, 629 (9th Cir. 2001) (holding that claim for unpaid wages for alleged off-the-clock work in violation of the California Labor Code was preempted by the LMRA because to determine what work was compensable required interpretation of the CBA).

11.     On or about April 4, 2007, Plaintiff was hired as a Security Officer by Defendant, which was and is a company engaged in commerce and in an industry affecting commerce within the meaning of sections 2(2), 2(6), and 2(7) of the National Labor Relations Act ("NLRA") and Section 301, in an industry affecting commerce, as defined by the LMRA, 29 U.S.C. §§ 141, *et seq.*  Bisienere Decl., ¶ 3; *see also* Complaint, ¶ 6.

12.     At all relevant times during his employment, Plaintiff was represented by the Independent Employee Service Association ("Union"), which is a labor organization representing employees in an industry affecting commerce as defined in the LMRA, 29 U.S.C. §§ 141, *et seq.*  Bisienere Decl., ¶ 3.

13.     At all relevant times, the terms and conditions of Plaintiff's employment were governed by a CBA entered into by and between the Union and Defendant.  Bisienere Decl., ¶ 3.  The CBA is a contract between an employer and a labor organization within the meaning of Section 301.   A true and correct copy of the two CBAs that governed Plaintiff's employment during all relevant times are attached as Exhibits "B-1" and "B-2" to  the Bisienere Declaration.

NOTICE OF REMOVAL OF CIVIL ACTION
TO FEDERAL COURT UNDER 28 U.S.C. §§
1331, 1332, 1441, 1446, AND 1453

LEGAL_US_W # 90711047.1

14.     Plaintiff's first purported cause of action alleges that Defendant violated the California Labor Code with respect to him and the putative class and group of alleged aggrieved employees he seeks to represent by failing to pay minimum wage for all hours worked, including as a result of allegedly failing to pay for time spent changing into and out of a work uniform.  Complaint, ¶¶ 15-19.

15.     While Plaintiff purports to assert this claim under California law without reference to the CBA, the claim cannot be adjudicated without interpreting or applying the terms of the CBA.  Schedule A of the CBA explicitly addresses the wage rates that apply to the Union-represented employees.  Bisienere Decl., Exhibit B-1 at pp. 45-47 and Exhibit B-2 at pp. 54-55.  It specifies the starting rates, premium rates, and rate increase schedule that apply to bargaining unit members.  *Id.*  Therefore, the minimum wage rate at which Plaintiff and members of the putative class would be compensated, if they proved Defendant was liable, would be defined by the rates detailed in the CBA.  As a result, the first cause of action is completely preempted by the LMRA.

16.     Further, one of the two primary theories underlying the minimum wage claim is that Defendant's "non-exempt employees who are required to wear uniforms or costumes are not paid for the time they are required to change into their uniforms or costumes prior to the beginning of their shift."  Complaint, ¶ 1.

17.     Like the hourly rates at which Union members are compensated, the CBA also explicitly provides compensation for time spent changing costumes or uniforms.  Bisienere Decl., Exhibit B-1 at p. 44 and Exhibit B-2 at p. 53.  Thus,

NOTICE OF REMOVAL OF CIVIL ACTION
TO FEDERAL COURT UNDER 28 U.S.C. §§
1331, 1332, 1441, 1446, AND 1453

LEGAL_US_W # 90711047.1

to determine whether Plaintiff has been appropriately paid for any time spent changing into and out of a uniform will require interpretation and application of the CBA.

18.     Further, whether a preliminary or postliminary activity constitutes working time has been a central issue in numerous federal labor arbitrations for many years.  *See, e.g., In re Combined Communications Corp. and Intern'tl Brotherhood of Elec. Workers, Local 292,* 100 L.A. 17 (1992) (resolving whether CBA stating that "travel time shall be treated as working time" required payment of time spent on overseas flight as "working time"); *In re Jacksonville Shipyards and Intern'tl Brotherhood of Boilermakers Local 805,*76 L.A. 652 (1981) (determining whether certain tasks preliminary to work constitute work time entitled to premium pay under CBA); *In re Curtis Mathes Manufacturing Co. and United Furniture Workers Local 376,* 73 L.A. 103 (1979) (deciding whether 5 to 20 minute period while employees subject to security procedures constitute "hours worked").

19.     Therefore, the determination of whether the alleged time Plaintiff contends that he and the members of the class and group of alleged aggrieved employees he seeks to represent spent changing constitutes "working time" is substantially dependent on analysis and interpretation of the CBA.

## B.     Plaintiff's Remaining Claims Are Also Removable.

20.     Plaintiff's second, third, fourth, and fifth causes of action likewise are substantially dependent on interpretation and application of the CBA because they are premised on the same facts and theories as the first purported

NOTICE OF REMOVAL OF CIVIL ACTION
TO FEDERAL COURT UNDER 28 U.S.C. §§
1331, 1332, 1441, 1446, AND 1453

LEGAL_US_W # 90711047.1

1   cause of action for failure to pay minimum wages.  *See* Complaint, ¶¶ 21-23, 28-29,

2   36-37, and 45.  Therefore, these claims are also removable under the Court's

3   original jurisdiction.

4

5       21.    Alternatively, pursuant to 28 U.S.C. section 1367(a), the Court

6   has supplemental jurisdiction over Plaintiff's second, third, fourth, and fifth causes

7   of action because they are substantially related to Plaintiff's first cause of action for

8   alleged unpaid minimum wages.  *See* 28 U.S.C. § 1367(a).  Consequently,

9   considerations of judicial economy and fairness to litigants require that all of

10   Plaintiff's causes of actions against Defendant be litigated together in a single

11   action.  *See United Mine Workers v. Gibbs*, 383 U.S. 715, 725-26 (1966).

12

13       22.    Accordingly, this Court has federal question jurisdiction over

14   the entire Complaint and removal is proper on this basis alone.

15

16                         **CAFA Jurisdiction**

17

18       23.    This action is also properly removed to this Court based on the

19   rules for removal jurisdiction under CAFA.  *See* 28 U.S.C. §§ 1332(d) and 1453.

20

21       24.    CAFA provides that a district court has original jurisdiction of a

22   putative class action (and thus is removable to federal court) if:  (a) the proposed

23   class members number at least 100; (b) any member of a class of plaintiffs is a

24   citizen of a state different from that of any defendant; and (c) the amount in

25   controversy exceeds $5,000,000, exclusive of interest and costs.  28 U.S.C. §§

26   1332(d)(2), (5)(B).

27

28

NOTICE OF REMOVAL OF CIVIL ACTION
TO FEDERAL COURT UNDER 28 U.S.C. §§
1331, 1332, 1441, 1446, AND 1453

LEGAL_US_W # 90711047.1

## A. The Number Of Putative Class Members Is At Least 100.

25. Plaintiff seeks to represent five different subclasses of similarly situated persons, including "[a]ll persons who, at any time since the date four years before the filing of the complaint, worked for Defendant as a non-exempt employee in California." Complaint, ¶ 11. Plaintiff further alleges that each of the proposed five classes are comprised of "not less than 50 members" and that the "Class members are so numerous that the individual joinder of all of them as named plaintiffs is impracticable." *Id.*, ¶ 12(a). As defined by Plaintiff, the proposed class consists of at least 30,000 employees.[1] Bisienere Decl., ¶¶ 4-5. Accordingly, the proposed class numbers at least 100 individuals.

## B. There Is Complete Diversity Between The Parties.

26. Under CAFA, Defendant need only show that "*any* member" of the putative class "is a citizen of a State different from any defendant." 28 U.S.C. § 1332(d)(2)(A) (emphasis added).

27. Plaintiff was a resident of California on the date that this action was commenced, and he worked in Orange County, California during the period

---

[1] Plaintiff defines four of the five subclasses as excluding those individuals who are in the class covered by the court-approved class action settlement in *Zorio v. Walt Disney Worldwide Services Inc. et al.*, Los Angeles County Superior Court case no. BC549292. On February 4, 2016, the court in *Zorio* granted final approval of the class action settlement, which consisted of 5,476 class members, excluding class members who timely opted-out of that settlement. *See* Bisienere Decl., ¶ 4, Exhibits "B-3" and "B-4." Even excluding the *Zorio* settlement class members, the putative class in this matter numbers exceeds 30,000 individuals. *See* Bisienere Decl., ¶ 4.

NOTICE OF REMOVAL OF CIVIL ACTION
TO FEDERAL COURT UNDER 28 U.S.C. §§
1331, 1332, 1441, 1446, AND 1453

LEGAL_US_W # 90711047.1

1   relevant to his lawsuit.  Complaint, ¶¶ 5-6; *see also* Bisienere Decl., ¶ 7.  Plaintiff is

2   therefore a citizen of the State of California.  *See* 28 U.S.C. § 1332(a)(1) (an

3   individual is a citizen of the state in which he or she is domiciled).  Plaintiff also

4   alleges that two-thirds of the putative class members are citizens of California.

5   Complaint, ¶ 7.

6

7          28.    A corporation is deemed to be a citizen of the state in which it is

8   incorporated and where it has its principal place of business.  28 U.S.C. §

9   1332(c)(1).

10

11         (a)    Defendant is a corporation organized and existing under the

12  laws of the State of Florida with its headquarters office located in Florida.  *See*

13  Complaint, ¶ 8; Bisienere Decl., ¶ 6.

14

15         (b)    A corporation's "principal place of business" for diversity

16  purposes is determined by the "nerve center test."  *Hertz Corp. v. Friend*, 130 S. Ct.

17  1181, 1192-93 (2010).  The "nerve center test" locates a corporation's principal

18  place of business in the state "where the corporation's high level officers direct,

19  control, and coordinate the corporation's activities."  *Id.* at 1186.  The Court also

20  stated that, "in practice [the nerve center] should normally be the place where the

21  corporation maintains its headquarters--provided that the headquarters is the actual

22  center of direction, control, and coordination."  *Id.* at 1192.

23

24         (c)    On and before the date this action was commenced, Defendant's

25  corporate headquarters, principal corporate offices, and its corporate executive

26  officers and the majority of its employees were located in Lake Buena Vista,

27  Florida.  Bisienere Decl., ¶ 6. Defendant's corporate executive officers make or

28

- 10 -

NOTICE OF REMOVAL OF CIVIL ACTION
TO FEDERAL COURT UNDER 28 U.S.C. §§
1331, 1332, 1441, 1446, AND 1453

1    approve all high-level decisions and provide oversight, direction, control and

2    coordination of the business and/or administrative activities of Defendant within the

3    scope of their executive management positions, and this occurs at and emanates

4    from Defendant's headquarters offices in Lake Buena Vista, Florida.  Bisienere

5    Decl., ¶ 6.  Thus, under the "nerve center" test, Defendant is a citizen of the State of

6    Florida.

7

8         29.    Defendant is the only defendant named in this action and the

9    presence of Doe defendants has no bearing on diversity with respect to removal.

10   *See* 28 U.S.C. § 1441(a) ("For purposes of removal under this chapter, the

11   citizenship of defendants sued under fictitious names shall be disregarded.").

12

13        30.    Because at least one of the putative class members "is a citizen

14   of a State different from any defendant," CAFA's minimum diversity of citizenship

15   requirement is met.  28 U.S.C. § 1332(d)(2)(A).

16

17   **C.    The Amount In Controversy Exceeds $5 Million**.

18

19        31.    Without admitting that Plaintiff and/or the purported class or

20   group of alleged aggrieved employees could recover any damages, the amount in

21   controversy in this action exceeds $5,000,000, exclusive of interest and costs.

22

23        32.    Under CAFA, the putative class members' claims are

24   aggregated to determine whether the amount in controversy exceeds the threshold

25   "sum or value of $5,000,000, exclusive of interest and costs."  28 U.S.C.

26   §§ 1332(d)(2), (d)(6).

27

28

- 11 -

NOTICE OF REMOVAL OF CIVIL ACTION
TO FEDERAL COURT UNDER 28 U.S.C. §§
1331, 1332, 1441, 1446, AND 1453

LEGAL_US_W # 90711047.1

33.     For purposes of removal, the amount in controversy is simply "an *estimate* of the total amount in dispute, not a prospective assessment of defendant's liability." *Lewis v. Verizon Communications, Inc.*, 627 F.3d 395, 400 (9th Cir. 2010) (emphasis added). The removing defendant's burden "is not 'daunting,'" and "a removing defendant is *not* obligated to 'research, state, and prove the plaintiff's claims for damages.'" *Coleman v. Estes Express Lines, Inc.*, 730 F. Supp. 2d 1141, 1148 (C.D. Cal. 2010) (quoting *Muniz v. Pilot Travel Centers LLC*, No. Civ. S-07-0325 FCD EFB, 2007 WL 1302504, at *2 (E.D. Cal. May 1, 2007)) (emphasis in original). Moreover, under 28 U.S.C. § 1446(a), a notice of removal need only contain a "short and plain statement of the grounds for removal." 28 U.S.C. § 1446(a). Based on this language, the United States Supreme Court has held that a notice of removal need only include a "*plausible allegation that the amount in controversy exceeds the jurisdictional threshold*" – the notice "need not contain evidentiary submissions." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 135 S. Ct. 547, 551, 554 (2014) (emphasis added).

34.     Among other relief, Plaintiff seeks the following compensatory (money) damages:  payment of alleged unpaid minimum wages under California Labor Code section 1194, liquidated damages under California Labor Code section 1194.2 equal to the alleged unpaid minimum wages, and civil penalties for the failure to pay minimum wages under PAGA.  Complaint ¶¶ 18-19, 45; Prayer for Relief, ¶¶ D, E, and J.  In addition, Plaintiff seeks to recover statutory penalties under California Labor Code section 203 for all members of the proposed subclass who allegedly were not timely paid their final wages upon termination of employment in an amount equal to their daily wage times the number of days from their date of termination to the date they were paid all wages allegedly owed, up to 30 days, and statutory penalties under California Labor Code section 226(e) for the

- 12 -

1  alleged  failure to provide accurate itemized wage statements.  Complaint, ¶¶ 31,

2  38; Prayer for Relief, ¶¶ G and H.  Plaintiff also seeks an award of attorneys' fees.

3  Complaint, Prayer for Relief, ¶ L.

4

5       35.  With respect to the alleged failure to pay minimum wages,

6  Plaintiff asserts: "Defendant failed to pay Plaintiff and other members of the

7  Rounding Class and Dressing Time Class all the minimum wages owed to them for

8  the time they spent in activities that constituted compensable hours worked . . . ."

9  Complaint, ¶ 17.

10

11       36.  At all material times, there have been at least 30,000 members in

12  any one of the putative subclasses, as defined by the Complaint.  Bisienere Decl., ¶¶

13  5-6.

14

15       37.  The California minimum wage became $8 on January 1, 2008,

16  increased to $9 on July1, 2014, and then increased to $10 on January 1, 2016.  At

17  all material times, employees in each of the proposed subclasses have been paid no

18  less than the California minimum wage.  Bisienere Decl., ¶ 8.

19

20       38.  At all material times, employees in each of the proposed

21  subclasses have been paid wages on a weekly basis (i.e., 52 pay periods per year).

22  Bisienere Decl., ¶ 9.

23

24       39.  Based on the conservative assumption of putative class members

25  being unpaid for 5 minutes of compensable time per week at the minimum wage

26

27

28

- 13 -

rate of $9,[2] the amount in controversy for the first claim alone exceeds $5 million, as follows:

- average hourly rate of pay = at least $9

- average additional wages owed per week per individual = $0.75

- assuming 4 weeks of vacation or other time off in the year (i.e., 4 pay periods), average additional wages owed per year per individual = $36

- total additional wages across 4-year class period per individual = $144

- total alleged unpaid wages owed to putative class = **$4,320,000** (30,000 members x $144 wages owed)

40.     Defendant's estimate of $0.75 per pay period (i.e., week) is conservative. *See Muniz v. Pilot Travel Ctrs., No.* 07-0325, 2007 WL 1302504, at *2 (E.D. Cal. May 1, 2007) (finding that defendant need not "prove the plaintiff's claims" and assuming 100% violation rate when calculating amount in controversy); *Helm v. Alderwoods Grp., Inc.,* No. 08-1184, 2008 WL 2002511, at *5 (N.D. Cal. May 7, 2008) ("[D]efendants cannot be expected to try the case

---

[2] Plaintiff's own pay records demonstrate the conservative nature of this calculation based upon an hourly rate of $9.  Plaintiff started earning $9.75 an hour upon his hire in April 2007 and was earning $13.20 an hour at his separation in June 2016. Bisienere Decl., ¶ 10.

NOTICE OF REMOVAL OF CIVIL ACTION
TO FEDERAL COURT UNDER 28 U.S.C. §§
1331, 1332, 1441, 1446, AND 1453

LEGAL_US_W # 90711047.1

1  themselves for purposes of establishing jurisdiction, and then admit . . . that a

2  certain number of . . . violations did indeed occur.").

3

4      41.    Further, in his first cause of action, Plaintiff seeks to

5  recover liquidated damages in an amount equal to the alleged unpaid wages. This

6  doubles the amount in controversy on the unpaid minimum wages claim (i.e.,

7  **another $4,320,000**).

8

9      42.    Moreover, in connection with his first cause of action, pursuant

10  to California Labor Code section 1197.1, Plaintiff seeks to recover statutory

11  penalties of $100 per employee for the first pay period in which the alleged failure

12  to pay required minimum wages occurred, and $250 per employee for each

13  subsequent pay period in which this occurred, as well as civil penalties in the

14  amount of $100 per employee for the first pay period in which the alleged failure to

15  pay required minimum wages occurred, and $200 per employee for each

16  subsequent pay period under PAGA.  The statute of limitations for the recovery of

17  penalties is one year.  Cal. Civ. Proc. Code § 340.  In cases where statutory and

18  civil penalties are sought, "district courts in the Southern District of California and

19  the Central District of California have looked to the statutory maximum . . . in

20  determining whether the jurisdictional requirements . . . have been met." *Korn v.*

21  *Polo Ralph Lauren Corp.*, 536 F. Supp. 2d 1199, 1205 (E.D. Cal 2008).

22

23      43.    Going back one year from the date Plaintiff filed his Complaint,

24  and assuming a minimum class size of 30,000 with each putative class member

25  taking 4 weeks of vacation or other time off in the year, leaving 48 pay periods for

26  each class member, there would be 1,440,000 pay periods in that 1-year period

27  (30,000 x 48).  Thus, assuming conservatively that the Court would apply only a

28

- 15 -

NOTICE OF REMOVAL OF CIVIL ACTION
TO FEDERAL COURT UNDER 28 U.S.C. §§
1331, 1332, 1441, 1446, AND 1453

single (no layering of penalties) $100 penalty to each of the pay periods in the year, the penalty claim, according to the allegations in the Complaint, results in an additional amount in controversy of **$144,000,000** [$100 x 1,440,000 pay periods].

44.     Further, in determining whether a complaint meets the amount in controversy threshold for a removal under 28 U.S.C. § 1332, a court may consider the attorneys' fees being sought. *See Galt G/S v. JSS Scandinavia,* 142 F.3d 1150, 1155-56 (9th Cir. 1998) (attorneys' fees are included in determining the amount in controversy, regardless of whether the fee award is mandatory or discretionary); *McGuigan v. City of San Diego,* 183 Cal. App. 4th 610, 638 (2010) (noting attorneys' fees paid in settlement of $1.6 million). The Ninth Circuit has established a benchmark of 25% for approved attorneys' fees awards in class action cases. *See Paul, Johnson, Alston & Hunt v. Graulty,* 886 F.2d 268, 272 (9th Cir. 1989). Adding a 25% attorneys' fee award to only the amount being sought by Plaintiff for unpaid minimum wages (not including liquidated damages or PAGA penalties), an additional **$1,080,000** would be added to the amount in controversy.

45.     Accordingly, although Defendant denies Plaintiff's allegations of wrongdoing and denies that Plaintiff and putative class members or alleged aggrieved employees can recover any monetary amount, the facial allegations in Plaintiff's Complaint establish that the total amount in controversy significantly exceeds CAFA's minimum amount in controversy threshold of $5 million.

NOTICE OF REMOVAL OF CIVIL ACTION
TO FEDERAL COURT UNDER 28 U.S.C. §§
1331, 1332, 1441, 1446, AND 1453

LEGAL_US_W # 90711047.1

1           WHEREFORE, Defendant removes the above-entitled action from the

2    Superior Court of the State of California for the County of Orange to this Court.

3

4    DATED:  July 20, 2017                    PAUL HASTINGS LLP

5

6                                       By: _____

7                                            STEPHEN L. BERRY

8                                    Attorneys for Defendant
                                      WALT DISNEY PARKS AND

9                                    RESORTS U.S., INC.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

- 17 -

LEGAL_US_W # 90711047.1